# SMITH *v.* BOURBON COUNTY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 193. Submitted February 17, 1888. — Decided April 23, 1888.

The complainant's bill alleged that he was a judgment creditor of a railroad company; that the Board of Commissioners of Bourbon County had subscribed to the stock of the railroad company, and had voted upon it at meetings of the corporation, and had thereby become bound to the company to issue to it bonds of the county equal to the par value of the stock; that the bonds had not been issued; and that the obligation was still outstanding. The remedies sought for were, (1) that the company should be ordered to assign to the complainant its claim against the county; and (2) a decree against the county ordering it to issue the bonds, and to deliver them to the complainant, to be credited upon his judgment at their face value. *Held,*

(1) That the right to proceed against the county and its officers to compel the issue of the bonds was a purely legal right, to be prosecuted at law, in mandamus, whether the proceeding was in the name of the railroad company or of its privy by assignment;

(2) That the equitable nature of the complainant's rights against the company furnished no ground for the support of such a bill in equity against the county; and

(3) That the bill should be dismissed as to the county without prejudice to the complainant's right to proceed at law to obtain the issue of the bonds, after acquiring the rights of the railroad.

This was a bill in equity filed January 28, 1880, in the nature of a creditor's bill.   The appellant was the complainant below, and in December, 1879, recovered a judgment at law in the Circuit Court of the United States for the District of Kansas for $267,113.19, besides costs, against the Fort Scott, Humboldt and Western Railroad Company, on which judgment an execution has been issued and returned unsatisfied, the defendant corporation being insolvent.   The object of the bill was to subject to the satisfaction of this judgment an alleged indebtedness of Bourbon County, Kansas, to the judgment debtor, the Fort Scott, Humboldt and Western Railroad Company.   That indebtedness consisted in a supposed legal obligation on the part of the Board of Commissioners of Bourbon County to issue and deliver to the Fort Scott, Humboldt and Western Railroad Company municipal bonds of the county in payment of a subscription of stock in the sum of $150,000.   The obligation to issue and deliver these bonds was alleged to arise upon the following facts:

On July 23, 1869, the Board of Commissioners of Bourbon County made an order, submitting a proposition to the voters of the county for the subscription of stock and the issuing of bonds of said county in the sum of $150,000, to secure the construction of a railroad from Fort Scott westwardly, north of the Marmaton River, in the general direction of Humboldt, in Allen County.

This order directed " that there be subscribed in the name and for the benefit of the county of Bourbon, in the State of Kansas, one hundred and fifty thousand dollars to the capital stock of any railroad company now organized, or that shall be organized hereafter, that shall construct a railroad commencing at the city of Fort Scott, in the county and State aforesaid, running from thence west, north of the Marmaton River, upon the most practical route in the general direction of Humboldt, Allen County, Kansas, and that the bonds of said county be issued to said company for the payment of said subscription, said bonds to be payable within thirty years from the date thereof, and bearing interest payable semiannually at the rate of seven per centum per annum: *Provided,*

That said bonds shall not be issued until the question shall have been submitted to a vote of the qualified electors of the county of Bourbon aforesaid, and shall have received a majority of the votes cast upon said proposition in favor thereof, in pursuance of the provisions of the statutes in such cases made and provided, and that said question shall be submitted to said electors at a special election on Tuesday the 24th day of August, A.D. 1869. At said election the votes shall be cast 'for railroad bonds' and 'against railroad bonds,' and if it shall appear, upon a canvass of the votes cast at said election, by proper officers according to law, that a majority of the votes cast upon said election are in favor of said subscription, then the said order shall be carried into practical operation by the issuing of said bonds to the said company whenever the County Commissioners of Bourbon County are satisfied that the bonds herein provided for, with the other resources of the said company, shall be sufficient and adequate to complete the construction of the road-bed ready for the iron from the city of Fort Scott to the west line of Bourbon County," etc.

There was no record of the notice of the election preserved or filed in the clerk's office, but as a fact the proof showed that the notice of the election was first given on July 28, 1869, by publication in the Fort Scott Monitor, a weekly newspaper published at Fort Scott, in said county, and for three successive weeks thereafter, the last publication being on August 18th, and the election on the 24th day of August. On August 27th the vote was duly canvassed by the board of commissioners, and was ascertained to be in favor of the subscription and issuing of bonds by a majority of over 700. In October, 1870, more than a year after the bonds were voted, the Fort Scott and Allen County Railroad Company was organized under the general laws of the State of Kansas for the purpose of building a railroad from Fort Scott westwardly, on the north of the Marmaton River, in the general direction named in the order under which the election was held. The corporators and directors of this railroad were composed largely of citizens of Bourbon County.

Soon after the organization of said railroad company, the commissioners of Bourbon County appointed Joseph S. Emmert agent for the county to subscribe for and in the name of the county $150,000 of stock in said company, under the authority of the election held August 24th, 1869, with the proviso that the company complete its road-bed ready for the iron from Fort Scott to the western line of the county by the 1st day of July, 1872. This agent subscribed to the capital stock of the company in the amount above stated in the name of the county, as authorized by said order of appointment, and the said 1500 shares of stock were at various meetings of the stockholders of the company represented and voted, either by the chairman of the county board or by some other person authorized thereto. On June 6, 1871, Franklin C. Smith, the complainant, made a contract with the railroad company to grade the road-bed from Fort Scott to Humboldt, about 23 miles, and to construct all necessary bridges, culverts, etc., for which he was to be paid in part by $125,000 of the bonds of Bourbon County to be issued in payment of its subscription. Before making the contract, he had assurances from two of the county commissioners that the bonds had been legally and regularly voted, and that they would be issued on the completion of his contract. On July 28, 1871, on application of the railroad company, the Board of County Commissioners ordered the bonds to be prepared, and signed by the chairman, and deposited in the safe of the treasurer's office to await further order, which was accordingly done. The road-bed was completed ready for the iron, in substantial compliance with the terms of the subscription, by the time named, to wit, July 1, 1872. In June, 1872, after the work was done, the railroad company demanded the bonds of the county board, which demand was not granted. In August following another demand was made by the railroad company, which was refused. The commissioners then ordered the bonds to be destroyed, which was in fact done. The county commissioners made no objection to the delivery of the bonds on the ground that the resources of the company, together with these bonds, were not sufficient to construct the road-bed. The name of the railroad com-

pany, after its organization, was changed to the Fort Scott, Humboldt and Western Railroad Company. The company never filed any profile or map of its route in the clerk's office of the county, nor did it secure or pay for the right of way along its line, with the exception of about eight miles.

The Circuit Court dismissed the bill, holding that the county commissioners were under no legal obligation to issue the bonds to the railroad company, and were not indebted to the railroad company by reason of its failure to issue them, because, 1st, the order of submission, under which the election was had, was illegal and void, for the reason that no railroad company was named in the order, nor was the company at that time in existence; 2d, the notice of the election was insufficient and illegal, because it was not given thirty days before the election ; 3d, the county was not estopped to deny its obligation by the proceedings of the board of commissioners, or the representations and assurances of the individual members. The correctness of this conclusion is questioned by the present appeal.

*Mr. H. E. Long* and *Mr. A. L. Williams* for appellant.

*Mr. E. M. Hulett* for appellees.

Mr. Justice Matthews, after stating the case, delivered the opinion of the court.

The prayer of the bill is for a decree, in the first place, against the Fort Scott, Humboldt and Western Railroad Company, which is a defendant, ordering it to assign to the complainant its claim against the county of Bourbon, and, in the second place, for a decree against Bourbon County and its Board of County Commissioners, ordering the latter to sign and issue in due form the bonds of said county in the sum of $150,000, payable in thirty years from the date thereof, with semi-annual interest coupons attached, in accordance with the terms of the subscription to the capital stock of the railroad company, and deliver the same to the complainant to be cred-

ited at their face value upon his judgment against the railroad company, and for general relief.

The relief prayed for does not include a decree against the county of Bourbon for the payment of money, and there is no foundation for such a prayer in the allegations of the bill. It does not charge that the county is indebted in any sum of money presently payable by virtue of its subscription to the capital stock of the railroad company. The legal obligation arising on that subscription is purely statutory, if the subscription itself be valid and binding; and the statutory obligation is satisfied by the issue and delivery to the railroad company of the bonds of the county in payment of the subscription. On the supposition that the subscription creates a legal obligation for its payment in bonds, the refusal of the commissioners of the county to issue and deliver the bonds, however wrongful, is not a breach of the obligation of the county which would give rise to an action against it for the recovery of damages. The breach of obligation in such a case would consist simply in the refusal on the part of the commissioners of the county to perform a ministerial duty, the only remedy for which would be a proceeding at law in the name of the railroad company by a writ of mandamus. That writ, if granted in a direct proceeding therefor by a proper judgment, would be directed against the officers of the county, and would command the performance of the specific duty which they had refused to perform, and would give to the company the precise and specific relief to which it would be entitled.

The complainant in the present case has and can have no other or greater rights against the county of Bourbon or its officers than are vested in the railroad company. The object of the bill is to subject to the satisfaction of the complainant's judgment against the railroad company the rights of the latter against the county of Bourbon and its officers. The proceeding for that purpose cannot change these rights, nor convert a right to require the delivery of the bonds into a claim for damages for their non-delivery.

It is clear that such relief as is alone suitable and adequate to the case cannot be granted in equity. If the proceeding

were in the name and on behalf of the railroad company itself, it would, as we have already stated, be at law in mandamus. That the complainant claims to be equitably entitled to be substituted for the railroad company in its rights against Bourbon County may entitle him to a decree against the railroad company for an assignment of its claim, so as to confer upon the complainant the right to use the name of the railroad company in a proceeding against the county and its commissioners; but it does not enlarge the rights of the railroad company against the county and its officers, nor change the remedy so as to enable a court of equity to entertain proceedings in mandamus. The bill might justify a decree against the railroad company for an assignment of its right to the bonds and requiring the railroad company to permit the use of its name for their recovery by the appropriate proceeding at law. The right to proceed against the county and its commissioners remains still a purely legal right, and can only be prosecuted at law, notwithstanding the equitable nature of the complainant's rights as against the railroad company.

As was said in *Hayward* v. *Andrews*, 106 U. S. 672, 675: "If the assignee of the chose in action is unable to assert in a court of law the legal right of the assignor, which in equity is vested in him, then the jurisdiction of a court of chancery may be invoked, because it is the proper forum for the enforcement of equitable interests, and because there is no adequate remedy at law; but when, on the other hand, the equitable title is not involved in the litigation, and the remedy is sought merely for the purpose of enforcing the legal right of his assignor, there is no ground for an appeal to equity, because by an action at law in the name of the assignor the disputed right may be perfectly vindicated, and the wrong done by the denial of it fully redressed. To hold otherwise would be to enlarge the jurisdiction of courts of equity to an extent the limits of which could not be recognized, and that in cases where the only matter in controversy would be purely legal rights." "To give a court of equity jurisdiction," as was said by Mr. Justice Woods, delivering the opinion of the court in *Fussell* v. *Gregg*, 113 U. S. 550, 554, "the nature of the relief asked

must be equitable, even when the suit is based on an equitable title." This rule was applied in *New York Guaranty Co.* v. *Memphis Water Co.*, 107 U. S. 205, where it was said that it was entitled to special consideration from the courts of the United States.

It follows from this view that the distinction in the jurisdiction of the courts of the United States between proceedings at law and in equity would limit the relief of the complainant under the present bill to a decree against the railroad company, investing the complainant with its rights and the use of its name in a proceeding to enforce by mandamus the issue and delivery of the bonds alleged to be wrongfully withheld.

The necessity for thus limiting the relief becomes more stringent as well as obvious from another consideration. In the case of *Rosenbaum* v. *Bauer*, 120 U. S. 450, it was decided by this court upon much deliberation, that § 716 of the Revised Statutes, giving power to a Circuit Court to issue all writs not specifically provided for by statute, which may be necessary for the exercise of its jurisdiction and agreeable to the usages and principles of law, construed in connection with §§ 1 and 2 of the act of 1875, operates to prevent the issuing by the Circuit Court of a writ of mandamus except in aid of a jurisdiction previously acquired by that court. It is perfectly clear, under the decisions of this court, that no application could be entertained in the Circuit Court for a writ of mandamus, directed against the County Commissioners of Bourbon County, at the suit and in the name of the railroad company itself. The Court would be without jurisdiction, and certainly that lack of jurisdiction cannot be supplied by converting the proceeding into a bill in equity, whether the proceeding be in the name of the railroad company for its own use, or in the name of the railroad company for the use of the complainant, its assignee, or in the name of the assignee himself. The objection is one of substance, and not merely of form. It cannot be waived, and it cannot be ignored.

*It follows from this view that, so far as the bill sought the relief prayed for against Bourbon County and its commissioners, the Circuit Court was without jurisdiction.*

*In point of fact, however, it assumed jurisdiction and decided the case on its merits. This, in our opinion, it had no authority to do. For that reason and to that extent the decree of the Circuit Court dismissing the bill generally must be modified so as to dismiss the bill as against the County of Bourbon and the County Commissioners of that county, without prejudice to the right of the complainant, on obtaining a proper assignment and authority from the railroad company to proceed at law in its name, to obtain the issue and delivery of the bonds described in the bill of complaint; and retaining the bill, if the complainant elects and shows itself entitled, as to the Fort Scott, Humboldt and Western Railroad Company, for relief against it alone, for an assignment of its right to the issue and delivery of the bonds of the county, and to the use of its name in a proceeding against the county and its commissioners for the enforcement of such right. It is accordingly so ordered.*