UNITED STATES v. WORKINGMEN'S AMALGAMATED COUNCIL OF NEW ORLEANS et al.

(Circuit Court, E. D. Louisiana. March 25, 1893.)

1. INJUNCTION—WHEN GRANTED—UNLAWFUL COMBINATIONS.
   Where an injunction is asked against the interference with interstate commerce by combinations of striking workmen, the fact that the strike is ended and labor resumed since the filing of the bill is no ground for refusing the injunction. The invasion of rights, especially where the lawfulness of the invasion is not disclaimed, authorizes the injunction.

2. SAME—BILL AND ANSWER—WAIVER OF OATH.
   Where the bill for injunction waives the oath of the respondents, an answer, under oath, denying all the equities of the bill, can, under the amendment to equity rule 41, be used at the hearing with probative force of an affidavit alone. Whether the injunction should issue must be determined by the whole evidence submitted.

3. UNLAWFUL COMBINATIONS—RESTRAINT OF TRADE.
   The act declaring illegal "every contract or combination in the form of trust, or otherwise in restraint of trade or commerce among the several states or with foreign nations," (26 St. at Large, p. 209,) applies to combinations of laborers as well as of capitalists.

4. SAME—EVIDENCE—ADMISSIBILITY.
   In order to sustain the allegations of a bill praying an injunction against a combination in restraint of interstate commerce, the complainant may offer in evidence, as matter of history, the official proclamation of the various government officers, and also newspaper reports supported by affidavits containing manifestoes and declarations of the respondents.

5. SAME—LAWFUL COMBINATIONS TURNED TO UNLAWFUL PURPOSES.
   The fact that a combination of men is in its origin and general purposes innocent and lawful is no ground of defense when the combination is

turned to the unlawful purpose of restraining interstate and foreign commerce.

6. SAME—LABOR STRIKES.

A combination of men to secure or compel the employment of none but union men becomes a combination in restraint of interstate commerce, within the meaning of the statute, when, in order to gain its ends, it seeks to enforce, and does enforce, by violence and intimidation, a discontinuance of labor in all departments of business, including the transportation of goods from state to state, and to and from foreign nations.

In Equity. Suit by the United States against the Workingmen Amalgamated Council of New Orleans, La., and others, to restrain the defendants from interfering with interstate and foreign commerce. Injunction granted.

F. B. Earhart, U. S. Atty.

A. H. Leonard, M. Marks, and Evans & Dunn, for defendants.

BILLINGS, District Judge. This cause is submitted upon an application for an injunction on the bill of complaint, answer, and numerous affidavits and exhibits. The bill of complaint in this case is filed by the United States under the act of congress entitled "An act to protect trade and commerce against unlawful restraint and monopolies," (26 St. at Large, p. 209.) The substance of the bill is that there is a gigantic and widespread combination of the members of a multitude of separate organizations for the purpose of restraining the commerce among the several states and with foreign countries. It avers that a disagreement between the warehousemen and their employes and the principal draymen and their subordinates had been adopted by all the organizations named in the bill, until, by this vast combination of men and of organizations, it was threatened that, unless there was an acquiescence in the demands of the subordinate workmen and draymen, all the men in all of the defendant organizations would leave work, and would allow no work in any department of business; that violence was threatened and used in support of this demand; and that this demand included the interstate and foreign commerce which flows through the city of New Orleans. The bill further states that the proceedings on the part of the defendants had taken such a vast and ramified proportion that, in consequence of the threats of the defendants, the whole business of the city of New Orleans was paralyzed, and the transit of goods and merchandise which was being conveyed through it from state to state, and to and from foreign countries, was totally interrupted. The elaborate argument and brief of the solicitors for the defendants presents six objections.

The defendants urge (1) that, the strike or cessation of labor being ended, and labor resumed throughout all branches of business, there is no need for an injunction. I know of no rule which is better settled than that the question as to the maintenance of a bill, and the granting of relief to a complainant, is to be determined by the status existing at the time of filing the bill. Rights do not ebb and flow. If they are invaded, and recourse to courts of justice is rendered necessary, it is no defense to the invasion of a right, either

admitted or proved, that since the institution of the suit the invasion has ceased. With emphasis would this be true where, as here, the right to invade is not disclaimed. The question, then, is, what was the state of facts at the time of and prior to the filing of the bill? or whether, if the facts alleged in the bill were true at that time, there was need of an injunction.

· The defendants urge (2) that the right of the complainants depends upon an unsettled question of law. The theory of the defense is that this case does not fall within the purview of the statute; that the statute prohibited monopolies and combinations which, using words in 'a general sense, were of capitalists, and not of laborers. I think the congressional debates show that the statute had its origin in the evils of massed capital; but, when the congress came to formulating the prohibition which is the yardstick for measuring the complainant's right to the injunction, it expressed it in these words: "Every contract or combination in the form of trust, or otherwise in restraint of trade or commerce among the several states or with foreign nations, is hereby declared to be illegal." The subject had so broadened in the minds of the legislators that the source of the evil was not regarded as material, and the evil in its entirety is dealt with. They made the interdiction include combinations of labor, as well as of capital; in fact, all combinations in restraint of commerce, without reference to the character of the persons who entered into them. It is true this statute has not been much expounded by judges, but, as it seems to me, its meaning, as far as relates to the sort of combinations to which it is to apply, is manifest, and that it includes combinations which are composed of laborers acting in the interest of laborers.

The defendants urge (3) that, the answer being under oath, and denying all the allegations of the bill, the injunction cannot issue. Before the adoption of the amendment to the forty-first rule in equity, it was a rule in chancery practice that, where the answer was under oath, and denied all the equities of the bill, the injunction should be refused; but, since in this case the oath of the respondents is waived in the bill, their answer, under rule 41, can be used at this hearing with the probative force of an affidavit alone, and no longer has necessarily the effect claimed for it by the defendants' solicitors.

The defendants urge (4) that the proofs in the case are vague, and insufficient to establish the allegations of the bill. When I consider the affidavits of individuals, and the proclamations of the governor of the state of Louisiana and the mayor of the city of New Orleans, and the statements in the public journals, supported by testimony, and the affidavits filed in this cause, I find the material allegations of the bill fully sustained. Not only was the flow of commerce through the city of New Orleans purposely arrested, but even the transportation of the goods and merchandise from the government warehouses to the landings was forcibly stopped. The following exhibits in the case, consisting of proclamations of the governor of Louisiana and the mayor of New Orleans, taken from the official journals, manifestoes, and the recitals of the sayings of

the defendants, taken from the public newspapers, which have not been disproved by the respondents, show, as matter of history, the vast proportions of the interruption caused by the defendants to the prosecution of all the branches of business within the city of New Orleans, and the purpose with which it was done, to wit, that no business was to be transacted till the demands made by the employes of the warehousemen and the subordinate draymen were complied with:

"A General Strike Ordered by the Amalgamated Council for To-Morrow, Unless the Merchants Recognize the Union this Evening.

"President Leonard's Statement.

"When the people of New Orleans awake to-morrow morning, they will probably find that one of the largest strikes that has ever taken place in this city has been inaugurated. To-day, at 12:30 o'clock, President Leonard, of the Amalgamated Council, made his promised statement to the members of the press relative to last night's meeting of the council. Mr. Leonard said that it had been decided at the meeting to order a general strike for to-morrow morning, unless the merchants ask for a conference this afternoon. The unions were determined to compel the employers to recognize them, and they took this step to force this recognition, if possible. Mr. Leonard further said that every trade and line over which the council has jurisdiction will go out, barring none. If at any time during the strike the merchants manifest a desire to recognize the unions, the men will be ordered to return to work, and a conference committee appointed to meet a similar committee from the merchants. The committee of fifteen of the Amalgamated Council will remain in session for some hours this evening, and the employers will thus be given their last chance to accede to the demands of the strikers."

"The Strike Ordered.

"Hall Amalgamated Council, New Orleans, November 4, 1892.

"At a meeting of presidents of the labor unions and organizations, held on Friday, November 4, 1892, at the Screwmen's Hall, the following manifesto was adopted and ordered submitted to all the members of labor unions and organizations in the city of New Orleans:

"'To All Union Men Wherever Found, Greeting: In view of the fact that in the difficulty existing between the board of trade, merchants, boss draymen, and weighers, and in view of the fact that they claim to represent the entire employing power in the city, and claim broadly and emphatically that they will not recognize unions or labor organizations in connection with their business, and endeavor by their acts to prevent other employers from either employing or recognizing union men, and believing it for the best interests of organized labor that we refrain from working for any employer until the board of trade and others recognize the rights of men to organize into labor unions throughout the city, calling them, as union men, to abstain from any work or assisting in any way in prolonging the existing difficulty. The gauntlet has been thrown down by the employers that the laboring men have no rights that they are bound to respect, and, in our opinion, the loss of this battle will affect each and every union man in the city; and, after trying every honorable means to attain an equitable and just settlement, we find no means left open but to issue this call to all union men to stop work, and assist with their presence and open support from and after Saturday noon, November 5, 1892, and show to the merchants and all others interested that the labor unions are united.

"'James Leonard, Chairman.
"'John Breen,
"'A. M. Keir,
"'James H. Porter,
"'John M. Callaghan,
"''Committee.'"

"Will the Strike be General?

"Meeting of the Amalgamated Council this Evening.

"To the representative of a morning paper, Assistant State Organizer Porter said the outlook for successful strike was a most excellent, and promised that every union in the city would stand by the locked-out workmen. He said it was possible a general strike would be ordered, and that labor is determined to win this struggle. A union man who was with Mr. Porter is represented to have said that the strike will be made a victory of the laboring classes of the city, and, unless the unions are recognized, there will be more bloodshed than imagined. Mr. Porter is reported to have added: 'We propose to win by peace, if we can; but, if we are pushed to the wall, force will be employed.' There are ninety-seven unions in the city. The Amalgamated Council meets to-night to discuss the strike. The joint conference of the executive committees of the striking organizations met last night, and decided to pay no attention to the invitation of the merchants with respect to the proposed tribunal. Inasmuch as the merchants decline to recognize the unions, the unions refuse to appoint any members of the tribunal, and will only do so when they are given to understand that the men they may appoint are to be regarded as official representatives of their unions."

"Answer to Proposition of the Governor.

"Nov. 8th, 1892.

"To His Excellency, Gov. M. J. Foster—Dear Sir: According to agreement, we were to give you an answer this morning in regard to certain propositions that you have submitted; but, after consideration by the committees, we found that the propositions would have to be first submitted to the executive committee of the merchants' body, and we have not, up to the present time, heard what action was taken in regard to the matter. In consideration of these facts, we now have these propositions to submit, and will have to stand on them: First. We are willing to arbitrate on wages. Second. We are willing to arbitrate on hours. Third. We want the question of 'none but union men to be hired when available, from and after the final adoption of tariff and hours,' to be accepted without arbitration.

"James Leonard, Chairman.
"John Breen.
"A. M. Keir.
"John Callaghan.
"James Porter."

"Proclamation.

"Mayoralty of New Orleans, City Hall, Nov. 9, 1892.

"Citizens of New Orleans: The time has come when I, as your mayor, feel that the forces placed at my command are inadequate to further protect peaceable citizens and their property, owing to the many demands made on them. I am then compelled to call upon all good citizens desirous of the welfare and safety of the city. I, therefore, as your chief magistrate, do hereby issue this, my proclamation, commanding all law-abiding and law-loving citizens to attend at the city hall to-morrow, (Thursday,) Nov. 10, 1892, and then and there to be sworn in as special officers to aid and assist the organized police force of this city in their duties incumbent upon them.

"Given under my hand and seal of office, this ninth day of November, in the year of our Lord 1892.

"By the Mayor,                                        John Fitzpatrick.
    "Clark Steen, Secretary."

"Proclamation of the Governor.

"New Orleans, La., Nov. 10/92.

"To the People of New Orleans: The condition of affairs prevailing in your city during the past ten days; the danger to the peace and good order of this community arising from the paralysis of industry, trade, and commerce, and from the suspension of the usual means of transportation; the inse-

curity of life and property caused by the perturbed state of the public mind, aggravated by the closing of the gas and electric light works, thus holding out an incentive to criminals to ply their vocation in darkness,—have not escaped my attention, and have caused me the deepest solicitude. I therefore request all peaceable citizens not to congregate in crowds upon the streets and thoroughfares, and I urge upon them to discountenance all undue excitement and acts of violence, and to make known to the officers intrusted with the administration of the law any breaches of the peace. I hereby declare that the people of this city must and shall be protected in the full enjoyment of all their constitutional rights and privileges. All the power vested in me by the constitution and laws of this state shall be devoted to the preservation of the peace, the maintenance of good order, and the protection of the lives and property of the citizens.          Murphy J. Foster, Governor of Louisiana."

"The governor said there were no further orders to communicate at the moment. It is understood, however, that orders are being issued to the militia, and that, after the railroad presidents' meeting is over, an effort will be made to start the street cars.    The companies are expected to furnish the drivers, and the entire military force of the state, with the bodies that are being organized as recruits, will be used to furnish them with the necessary protection. That will settle the question very soon whether the rioters or the legally constituted authorities of the state are to be masters of the situation."

The defendants urge (5) that the corporations of the various labor associations made defendants are in their origin and purposes innocent and lawful. I believe this to be true. But associations of men, like individuals, no matter how worthy their general character may be, when charged with unlawful combinations, and when the charge is fully established, cannot escape liability on the ground of their commendable general character. In determining the question of sufficiency of proof of an accusation of unlawful intent, worth in the accused is to be weighed; but when the proof of the charge is sufficient,—overwhelmingly sufficient,—the original purpose of an association has ceased to be available as a ground of defense.

The defendants urge (6) that the combination to secure or compel the employment of none but union men is not in the restraint of commerce. To determine whether the proposition urged as a defense can apply to this case, the case must first be stated as it is made out by the established facts. The case is this: The combination setting out to secure and compel the employment of none but union men in a given business, as a means to effect this compulsion, finally enforced a discontinuance of labor in all kinds of business, including the business of transportation of goods and merchandise which were in transit through the city of New Orleans, from state to state, and to and from foreign countries. When the case is thus stated,—and it must be so stated to embody the facts here proven,— I do not think there can be any question but that the combination of the defendants was in restraint of commerce.

I have thus endeavored to state and deal with the various grounds of defense urged before me. I shall now, as briefly as possible, state the case as it is established in the voluminous record.

A difference had sprung up between the warehousemen and their employes and the principal draymen and their subordinates. With the view and purpose to compel an acquiescence on the part of the

employers in the demands of the employed, it was finally brought about by the employed that all the union men—that is, all the members of the various labor associations—were made by their officers, clothed with authority under the various charters, to discontinue business, and one of these kinds of business was transporting goods which were being conveyed from state to state, and to and from foreign countries. In some branches of business the effort was made to replace the union men by other workmen. This was resisted by the intimidation springing from vast throngs of the union men assembling in the streets, and in some instances by violence; so that the result was that, by the intended effects of the doings of these defendants, not a bale of goods constituting the commerce of the country could be moved. The question simply is, do these facts establish a case within the statute? It seems to me this question is tantamount to the question, could there be a case under the statute? It is conceded that the labor organizations were at the outset lawful. But, when lawful forces are put into unlawful channels,—i. e. when lawful associations adopt and further unlawful purposes and do unlawful acts,—the associations themselves become unlawful. The evil, as well as the unlawfulness, of the act of the defendants, consists in this: that, until certain demands of theirs were complied with, they endeavored to prevent, and did prevent, everybody from moving the commerce of the country. What is meant by "restraint of trade" is well defined by Chief Justice Savage in People v. Fisher, 14 Wend. 18. He says:

"The mechanic is not obliged by law to labor for any particular price. He may say that he will not make coarse boots for less than one dollar per pair; but he has no right to say that no other mechanic shall make them for less. Should the journeymen bakers refuse to work unless for enormous wages, which the master bakers could not afford to pay, and should they compel all journeymen in the city to stop work, the whole population must be without bread; so of journeymen tailors or mechanics of any description. Such combinations would be productive of derangement and confusion, which certainly must be injurious to trade."

It is the successful effort of the combination of the defendants to intimidate and overawe others who were at work in conducting or carrying on the commerce of the country, in which the court finds their error and their violation of the statute. One of the intended results of their combined action was the forced stagnation of all the commerce which flowed through New Orleans. This intent and combined action are none the less unlawful because they included in their scope the paralysis of all other business within the city as well.

For these reasons I think the injunction should issue.