VAUGHAN, State Superintendent of Public Instruction, v. JOHN C. WINSTON CO.

No. 1326.

Circuit Court of Appeals, Tenth Circuit.

April 18, 1936.

Mac Q. Williamson, Atty. Gen., Fred Hansen, Asst. Atty. Gen., and Harve L. Melton, Sp. Counsel to the Governor, J. D. Lydick, and Curtis P. Harris, all of Oklahoma City, Okl., for appellant.

Reuben M. Roddie, of Oklahoma City, Okl., Bailey & Hammerly, of Chickasha, Okl., and Hayes, Richardson, Shartel, Gilliland & Jordan, of Oklahoma City, Okl., for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

McDERMOTT, Circuit Judge.

The legislature of Oklahoma created a Textbook Commission empowered to adopt textbooks for use in the common schools of Oklahoma. The Commission is composed of six members appointed by the Governor, and the State Superintendent of Public Instruction, who acts as secretary of the Commission. The statute requires the Commission to advertise for bids for at least thirty days, then to consider the bids and let the contracts. Books so adopted must be used in the schools to the exclusion of all others. The State Superintendent of Public Instruction is required to address a circular letter to all the school authorities in the state containing a list of adopted books and their prices. Chapter 84, Okl.Sess.Laws 1933, repealing article 1, c. 34, Okl.Stat.1931 (sections 6694-6730).

In October, 1934, the Winston Company was awarded a contract for the period from July 1, 1935, to June 30, 1939, covering five books. It gave the bond required by statute; it printed great quantities of the books, many of them peculiar to Oklahoma and of little or no value elsewhere; it established a depository in the state where a sufficient stock was maintained from which the demand could be promptly supplied; it bonded dealers in each county to handle its books. All this, as required by the statute. It complied with its contract at a heavy expense and in July, 1935, was ready to furnish its books to the patrons of Oklahoma. The only source from which the company could reimburse itself for its large outlay was from its sales to the public. There is no suggestion of fraud in procuring the contract, or of failure of the company to comply with its terms in all respects.

Vaughan thought it inadvisable to let contracts in the fall of the year; the

other members thought otherwise. Outvoted, Vaughan undertook to force his view upon the Commission by the simple expedient of declining to perform the ministerial duty of publishing the advertisements for bids as directed by the Commission. Since Vaughan's desire was to delay the letting, it is apparent that mandamus would have been an ineffective remedy, for the delay incident to litigation would have enabled Vaughan to overrule the Commission. The Commission then appointed its chairman as assistant secretary who published the advertisements. No literary genius or official discretion was involved in composing or publishing such formal advertisements.

The statute directed Vaughan to notify the school authorities of all adoptions. Vaughan failed to send out such notice. Not only did he fail so to do, but he undertook to usurp the powers vested by the legislature in the Textbook Commission by sending a circular letter to the school authorities affirmatively and falsely stating that there were no changes in the textbooks, and that patrons should buy the books in use the year before. By this letter Vaughan, for all practical purposes, repealed the textbook laws of Oklahoma. If the statutes of a state may thus be defied by an administrative officer sworn to obey the law, it is a useless expense to convene the legislature to enact laws. Vaughan's disregard of the law also worked an irreparable loss on the Winston Company which had gone to heavy expense to fulfill a contract honestly and legally made, for that company has agreed to forego its legal right to compel patrons who had purchased unauthorized books on Vaughan's advice, to discard them and purchase another set.

This action was then brought to enjoin Vaughan from further slandering appellee's contract and to require him to undo the wrong done in sending out the false circular by sending out a true one. The very day the suit was brought, Vaughan sent out another circular directing the county superintendents to use other texts than those lawfully adopted in making up their book-lists for the coming school year.

After issue joined and a trial, the court below granted the relief prayed. The mandatory feature of the injunction order was stayed 15 days to enable appellant to apply to this court for a stay pending the hearing of this appeal. Such application was made last September and denied, it appearing that the right of the matter was all on the side of the decree below. The decree below has been carried out, and it is probable this appeal is moot. We will, however, briefly refer to the contentions made.

It is contended that the contract is illegal because the advertisement for bids was prepared and published by the chairman of the Commission, as assistant secretary, instead of the secretary. That was done because the appellant declined to perform his statutory duty. The contention comes to this: If the secretary of the Commission does not approve of the Commission's actions, he need not perform his duties as secretary, and the Commission is powerless to authorize any one else to perform them. Or, to put it even more simply, the Commission is authorized to adopt textbooks if its secretary is willing.

Whether a statutory requirement is mandatory in the sense that failure to comply therewith vitiates the action taken, or directory, can only be determined by ascertaining the legislative intent. If a requirement is so essential a part of the plan that the legislative intent would be frustrated by a noncompliance, then it is mandatory. But if the requirement is a detail of procedure which does not go to the substance of the thing done, then it is directory, and noncompliance does not invalidate the act. Reading this statute as a whole, it seems clear that the statutory plan is that contracts shall not be entered into except after at least 30 days advertisement and upon a consideration of sealed bids by the Commission. The identity of the individual composing or signing the advertisement is not an essential of the plan, and is merely directory. The legislature did not intend that its plan of textbook adoptions might be frustrated by a secretary declining to carry out the orders of the Commission. The legislature intended to lodge the power of adoption in the Commission and not in its secretary. This court recently held that a bond election was not invalidated because a notice of election was signed by the City Clerk instead of the City Council. West Missouri Power Co. v. City of Washington, 80 F.(2d) 420, certiorari denied 56 S.Ct. 834, 80 L.Ed. ——. The Oklahoma court has repeatedly held that where the manner or method of performance does not

go to the essence of the act required by statute, failure to conform to the manner or method prescribed will not invalidate the act, unless the statute expressly prohibits any other procedure. Bonaparte Co. v. American Vinegar Mfg. Co., 161 Okl. 54, 17 P.(2d) 441; City of Enid v. Champlin Refining Company, 112 Okl. 168, 240 P. 604; School Dist. No. 61, Payne County, v. Consolidated Dist. No. 2, 110 Okl. 263, 237 P. 1110; Norris v. Cross, 25 Okl. 287, 105 P. 1000; Lewis' Sutherland on Statutory Construction, ch. XVI.

■ Next it is contended that the contract is invalid because other contracts for other textbooks were infected with the vice that their authors agreed to donate part of their royalties to the Wm. H. Murray Educational Foundation. It is not claimed that the Winston contract is so infected. It is doubtful if this question is properly presented on the record, but we pass that point because the contention borders upon the absurd. Even if the agreement as to royalties is illegal, which we do not say, a contract honestly made with a state officer is not vitiated because that officer, on another occasion, dealt collusively with some one else.

■ It is contended that the contract as to the English books is invalid because entered into before May 10, 1935. Section 5 of the act, Id., provides "that adoptions to replace existing contracts expiring in 1934 and 1935 shall not be made until May 10th of their respective expiration years." This refers to contracts existing when new adoptions are made. There is reason for prohibiting the Commission from changing adopted textbooks until near the end of the school year, but none that we can see for making a separate class out of contracts which happen to be in force when the act was passed. In interpreting statutes, rational constructions are favored if the language fairly permits. No contract for English books existed when this contract was made in November, 1934. One had been in existence which ran until June 1, 1935, but it was terminated according to its terms on May 12, 1933, and its termination acquiesced in by the company having the contract. No contract existing, then, in 1934, the statute did not prohibit a letting until after May 10, 1935. A more exhaustive discussion of the validity of this contract may be found in the able opinion of Judge Kennamer, reported in (D.C.) 11 F.Supp. 954, which we approve.

Vaughan then contends that, notwithstanding the continuing irreparable injury done appellee for which concededly there is no adequate remedy at law, a federal court of equity is without power to right the wrong. Equity was born of an instinct that for every wrong there should be an effective remedy. Courts of justice fail in the discharge of their responsibilities to the citizen with a just cause, if they send him away empty-handed because a remedy cannot be discovered among the archives of the past. Equity is efficient because its remedies are flexible, and may be adapted to the needs of the occasion. If no case had hitherto arisen in which precedent could be found for the relief necessary here to right a grievous wrong, equity need not stay its hand on that account. If precedent be necessary for every act, then law and equity are static. But ample and controlling precedent warrants, if not compels, the relief granted below.

■ First as to that part of the order enjoining Vaughan from sending out any more untrue letters slandering appellee's contract: The challenge here is not to the traditional power of equity to enjoin threatened injury, but that the testimony disclosed no verbal threat of Vaughan to send out more letters. Nor need there be. If threat of injury may only be found in expressions of the defendant, an illiterate mute would be exempt from injunctive orders. Here, as in conspiracy cases and elsewhere, circumstances are the best and sometimes the only obtainable proof. Vaughan's persistent determination to work his will despite the law is proven by an unbroken course of conduct running back to the preceding August; his contentions at the trial and in this court demonstrate no change of heart. Even if he had recanted at the trial, which he did not, still there was equity in the bill when it was brought, and relief to which appellee was then entitled could not be denied because of verbal protestations upon the trial. Equity may act to avert an impending wrong; it is not divested of power because a defendant suspends his wrongdoing when he is sued, or protests his good intentions for the future. Swift & Co. v. United States, 276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587; Pierce v. Society of Sisters, 268 U.S. 510, 536, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Pennsylvania v. West Virginia, 262 U.S. 553, 592,

43 S.Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300; Vicksburg Waterworks Co. v. Vicksburg, 185 U.S. 65, 82, 22 S.Ct. 585, 46 L.Ed. 808; Mobile Gas Co. v. Patterson et al. (D.C.) 288 F. 890; United States v. Workingmen's Amalgamated Council (C.C.) 54 F. 994, 26 L.R.A. 158; Roberts v. City of Louisville, 92 Ky. 95, 17 S.W. 216, 13 L.R.A. 844. If, except for the injunction, Vaughan would have continued to send out defamatory circulars, then the order concededly was proper; if he did not so intend, then he is not hurt by the order. His appeal from that part of the order indicates it hurts; but it can only hurt if he desires to resume his unlawful acts.

■ As to that part of the order directing him to undo the damage done as far as it then could be by sending out a letter recalling the false and stating the true: It must be remembered that the wrong was a continuing one and irreparable. Every day patrons were buying unauthorized texts instead of appellee's. They would continue so to do until advised to the contrary by those in charge of the schools. The contract expressly absolved the state from financial liability thereon. Winston could not as a practical matter recoup the losses it was sustaining day by day either from the patrons who purchased unauthorized texts, or from Vaughan. The case presented is one where a continuing wrong can be stopped only by an affirmative act. In order to restore the status as it existed before Vaughan invaded the rights of appellee, affirmative action must be taken.

■ The power of equity, in an injunctive action, to issue an order requiring affirmative action is frequently and properly exercised. In Jones v. Securities and Exchange Comm., 56 S.Ct. 654, 80 L.Ed. —— the Supreme Court refers with approval to many cases which have required defendants to take affirmative action to restore the status, even though it required the demolition of a building. See, too, Ickes v. Virginia-Colorado Development Corporation, 295 U. S. 639, 55 S.Ct. 888, 79 L.Ed. 1627. Our own court has upon at least three occasions approved injunctive orders which required affirmative action by defendants. Allen W. Hinkel Dry Goods Co. v. Wichison I. Gas Co. (C.C.A.) 64 F.(2d) 881; Board of Education of Town of Carmen, Okl., v. James (C.C.A.) 49 F.(2d) 91; Griffin v. Oklahoma Natural Gas Corp.

(C.C.A.) 37 F.(2d) 545. Other cases are: Fetzer v. Johnson (C.C.A.8) 15 F.(2d) 145, certiorari denied 273 U.S. 751, 47 S.Ct. 455, 71 L.Ed. 873; Welton v. 40 East Oak St. Bldg. Corp. (C.C.A.7) 70 F.(2d) 377, certiorari denied Chicago Title & Trust Co. v. Welton, 293· U.S. 590, 55 S. Ct. 105, 79 L.Ed. 685; Hoover Co. v. Sesqui-Centennial Exhibition Ass'n (D.C. Pa.) 48 F.(2d) 1061; St. Louis Southwestern R. Co. v. Board of Directors (C. C.A.8) 32 F.(2d) 124; Mutual Oil Co. v. Empire Petroleum Co. (C.C.A.6) 5 F.(2d) 500; Simon v. Frankfort Distillery (C.C. A.6) 2 F.(2d) 949; Puget Sound Power & Light Co. v. City of Seattle (D.C. Wash.) 271 F. 958; Vineyard Land & Stock Co. v. Twin Falls S. R. L. & W. Co. (C.C.A.9) 245 F. 9; The Salton Sea Cases (C.C.A.9) 172 F. 792, certiorari denied California Dev. Co. v. New Liverpool Salt Co., 215 U.S. 603, 30 S.Ct. 405, 54 L.Ed. 345; Hughes Fed. Practice, § 1026. The order of the trial court is couched in the form of a double negative, a circumstance to which we attach no importance. If the court is without power in a particular case to require the doing of an affirmative act, it does not acquire that power by the form of words in which the command is couched.

■ The order requiring Vaughan to send out letters to correct the untrue statements made in his earlier letters is justified on several distinct grounds: (1) It is the only appropriate means of rectifying the wrong done. (2) It was necessary to restore the status existing before Vaughan invaded appellee's rights. (3) Equity having jurisdiction to issue the prohibitory injunction, it had power to do all other things necessary to accomplish complete justice, for equity does not do things piecemeal.

. Appellant answers by directing attention to the fact that Congress has not authorized the court below to issue a writ of mandamus except in aid of jurisdiction otherwise acquired; authorities are cited to the point that a writ of mandamus may not be issued under the guise of a mandatory injunction. Covington & C. Bridge Co. v. Hager, 203 U.S. 109, 27 S.Ct. 24, 51 L.Ed. 111; Knapp v. Lake Shore Railway Co., 197 U.S. 536, 25 S.Ct. 538, 49 L.Ed. 870; Rosenbaum v. Bauer, 120 U. S. 450, 7 S.Ct. 633, 30 L.Ed. 743; Miguel v. McCarl, 291 U.S. 442, 452, 54 S.Ct. 465, 78 L.Ed. 901; Warner Valley Stock Co. v. Smith, 165 U.S. 28, 17 S.Ct. 225,

41 L.Ed. 621; Smith v. Bourbon County, 127 U.S. 105, 8 S.Ct. 1043, 32 L.Ed. 73; Fuller v. Aylesworth (C.C.A.6) 75 F. 694; Stevenson v. Holstein-Friesian Ass'n (C.C.A.2) 30 F.(2d) 625. The contention indicates a misconception of the case at bar. This is not an action at law for mandamus but one in equity for an injunction.

Injunction is a recognized remedy when adequate grounds therefor are established. It is an equitable remedy, obtainable only when the remedy at law is not adequate. Mandamus, while governed by equitable considerations, is a legal remedy. When appellee here came into equity, it assumed the burden of establishing grounds for equitable relief, including the inadequacy of any legal remedy. It established such grounds conclusively. By mandamus, even if available, Vaughan could only be required to mail the formal circular letter designated in the statute; he could not be compelled to undo his continuing wrong by recalling in terms the false letters theretofore sent out by him. The legal remedy of mandamus was therefore inadequate.

Vaughan invaded the rights of Winston. The facts justify the equitable relief decreed below. It is no defense that the decree commands him in part to do an act which happens also to be a statutory duty. The decree is not bottomed on his mere neglect to perform a statutory duty; it is bottomed on his unlawful acts in advising patrons to purchase books not authorized by statute instead of Winston's which were the legally adopted texts.

The decree is affirmed.