**UNITED STATES v. TARANTINO.**
**Civ. A. No. 9724.**

United States District Court
E. D. New York.
July 13, 1954.

Leonard P. Moore, U. S. Atty. for Eastern District of New York, Brooklyn, By Margaret E. Millus, Brooklyn, of counsel, for plaintiff.

Edward L. Dubroff, Brooklyn, for defendant.

BYERS, District Judge.

A question of law is presented in this cause under circumstances which involve no contested issues of fact; this means that itemized findings are not required to be stated.

■ That question is whether the language of 8 U.S.C. § 1004,[1] dealing with the revocation of naturalization of an alien soldier acquired while he was in the military service, §§ 1001, 1002,[1] is *ipso facto* forfeited by reason of his later dishonorable discharge therefrom; or that a court being vested with authority so to declare, is none the less empowered to inquire into the circumstances concerned in the discharge, and to decide the case according to his understanding of the evidence and in the ordinary exercise of the judicial function.

As I shall hope to make reasonably clear, the latter procedure is deemed to accord with the Congressional purpose.

The Nationality Act of 1940 was amended March 27, 1942 to provide, 8 U.S.C. §§ 1001 and 1002, for the acquisition of naturalization by aliens in the armed forces outside the jurisdiction of the Naturalization Court, and the filing of the proceedings and certificate with the Clerk of the Naturalization Court in the district of the applicant's residence. Sec. 1004[1] states that these provisions shall not apply to those who have been dishonorably discharged from the military or naval forces or discharged on account of alienage, or to certain kinds of conscientious objectors. Then follows the provision involved in this controversy:

"Provided, That citizenship granted pursuant to this subchapter may be revoked as to any person subsequently dishonorably discharged from the military or naval forces in accordance with Section 738 of this title; and such ground for revocation shall be in addition to any other provided by law." 56 Stat. 183.

1. Now 8 U.S.C.A. § 1440.

It is undisputed that this defendant was dishonorably discharged on May 14, 1946 pursuant to the order of a General Court Martial, having been found guilty of:

"Violation of the 61st Article of War.

"In that Private Joseph A. Tarantino, then of 689th Quatermaster Base Depot Company, did, without proper authority, absent himself from his station and duties at Dijon, France from about 27 May 1945, to about 19 June 1945."

A further specification of desertion from about 20 June 1945 to about 30 October 1945 in violation of the 58th Article of War, 10 U.S.C.A. § 1530, resulted in a finding of not guilty, but the charge was changed to a violation of the 61st Article, 10 U.S.C.A. § 1533, and as so changed, the finding was also guilty. The sentence was Dishonorable Discharge, forfeiture of pay and allowances and one year at hard labor.

The defendant, being then 28 years of age, was naturalized on June 4, 1943 pursuant to the said statute, while serving in the Army, at Canastel, Algeria. He was born in Italy October 28, 1914, and came to this country five years later with his parents.

He seems to have been inducted at Camp Upton on August 19, 1942 if the records in evidence are understood, which means that apparently he did not rely upon his then alienage to exempt him from military service.

Thus it becomes necessary to examine the Government's contention that judgment is required to be granted according to the prayer of the complaint, because the words above quoted that defendant's citizenship "may be revoked" really mean that it *must* be revoked; in effect that the Court is directed to perform the ministerial act of ordering revocation upon the undisputed record as made.

The argument is based upon the proposition that where "the rights of the public or other persons are dependent upon the exercise of the power conferred (namely the power of the court here invoked), the word 'may' takes on the mandatory form. The performance of the act provided for is then neither discretionary nor optional upon (with?) the person or officer required to perform the act." Such, it is said, was the decision in Supervisors v. U. S., 4 Wall. 435, 18 L.Ed. 419. Also cited are: Vaughan v. John C. Winston Co., 10 Cir., 83 F.2d 370; Wilson v. U. S., 3 Cir., 135 F.2d 1005; and Mullaney v. Hess, 9 Cir., 189 F.2d 417.

Since it is the judicial function which has been invoked, properly it seems, in view of the nature of naturalization proceedings, that function would not be called into play if all that is involved is the automatic application of the word "must" in place of the word "may". That simple expedient would relieve the Court of a duty which I think is implicit in the quoted language of the statute. Nor do any of the cases cited purport to establish a necessary statutory rule of judicial decision.

The arguments for the plaintiff are unconvincing:

(a) That since one who had already been dishonorably discharged in World War II could not *apply* for this form of naturalization, it follows that one so naturalized and who later suffers such discharge must of necessity lose the status so acquired. To this it seems that there are two answers: *First,* Congress was establishing a class who were permitted to make the application, and in so doing deliberately excluded certain classes of persons as ineligible, without requiring an examination into their respective past histories. *Second,* it is probable that there was a legislative recognition that citizenship once having been acquired by one serving with the colors, it should not be rendered automatically forfeit for possible misconduct falling short of wartime military circumspection but not necessarily incompatible with personal loyalty to the Nation. This is another way of saying that if Congress had intended to use the word "must" touching revocation of naturalization, it would have been easy enough to do so.

(b) It is urged that since the United States Attorney was under the statutory duty to present this case, there being good cause, 8 U.S.C. § 738,[2] it follows that what is mandatory on the prosecuting officer, is also mandatory on the court. This argument of course is based upon an obvious confusion between the duties of prosecution, and of adjudication.

In the belief that the permissive language which has been quoted was intended to require of the court the exercise of its customary duties and functions in the course of litigation, the present holding is that the prayer of the complaint *may*, not that it *must*, be granted.

■ Turning now to the history of the defendant, it appears that his dishonorable discharge resulted from his leaving his station in Dijon, France, without permission, right or privilege of any kind, and making his way to his home in this district, by some kind of subterfuge involving his becoming merged into another military unit which was lawfully being returned to the United States. This was on about May 27, 1945 which was after the German surrender.

If it had occurred prior to that event, doubtless it would have invited greater severity in disposition by the military authorities; and what is more important to the present inquiry, it would have manifested so low a concept of American citizenship (then of less than two years duration) as to require its revocation as a matter of course.

In mitigation of the offense, the defendant testified that his mother's then purported desperate illness of which he was informed by his sister, caused him to yield to the impulse to return at once to his home by any available means. The fact of the illness and the letters to the defendant on the subject, were testified to on the trial.

I do not place too much confidence in the excuse, in spite of the favorable impression made by the defendant on the witness stand; he had committed five breaches of discipline while in the service, and those records are in evidence. He knew therefore that if reasons existed which would justify his seeking an emergency leave to return to his home, there were special reasons personal to him, why he should at least make formal application therefor. Probably there were a deluge of similar requests at the time, under the relaxation of victory at arms, which made him believe that he would be unsuccessful—assuming the existence in his mind of such an impelling motive as he now proclaims. Probably the true explanation is that he acted upon an understandable but unjustifiable impulse to return to his home.

Upon arrival in this country he was advised by his priest to turn himself in, which he did forthwith at Fort Hamilton; he was ultimately tried by court martial, with the result that has been stated.

His record in the service is thus referred to in his Separation Qualification Record, as stated in the brief filed by his attorney:

> "This man has performed a variety of different odd jobs. This man also has a brilliant service record, having fought in the North African Campaign, where he earned four Bronze Stars. He also fought in the Italian and French Campaigns, where his performance was outstanding."

The foregoing is relied upon presently although perhaps not technically in evidence, in the belief that it is important, and that fairness to the defendant so requires.

He is married and is the father of children born in this country, and it would seem that his standing in their sight is not an entirely unimportant aspect of the problem as I conceive it to be.

The military records have been consulted, solely for such light as they may

---

2. Now 8 U.S.C.A. § 1451.

throw upon the defendant as an individual and his probable attachment or lack of it, to this Nation and its institutions, and therefore the influence that he may bring to bear upon his children in their formative years concerning their own duties of citizenship.

It is also apparent that he is sufficiently concerned about the issues here involved, to retain counsel to protect for him that which he believed he had not truly forfeited. That is some evidence that he holds his citizenship, not lightly, but as something to be treasured.

Thus the conclusion is reached, that the culmination of his nearly three years of military service which has been stated, does not impose upon the Court the inevitable requirement that the prayer of the complaint be granted.

█ This is deemed to be, all things considered, a case in which it is proper to conclude that the permissive language of the statute clothes the Court with the capacity in the exercise of what is conceived to be a fair understanding of the evidence, to deny to the plaintiff the relief which the complaint seeks.

Judgment therefore in favor of the defendant is hereby ordered.