## WILLIAMS, *County Clerk,* v. GARFIELD EXCHANGE BANK OF ENID.

No. 2957. Opinion Filed May 14, 1912.

Rehearing Denied July 22, 1913.

(134 Pac. 863.)

1. **TAXATION—Equalization—Remedies.** Whenever the statutes of a state provide a mode by which appeals may be taken from the assessment or equalization of property, that remedy is exclusive. Equitable remedies cannot be resorted to.

2. **SAME—Injunction—Proof.** Where a party seeks to enjoin the collection of a tax upon the ground of lack of uniformity on account of the action of the county board of equalization in raising the returned valuation thereof, it is not only necessary to allege in the petition, but it must be proved upon the trial, that the property was listed and returned for assessment at its true cash value before a court of equity will interfere.

3. **SAME—Grounds.** The judgment of the county board of equalization empowered to fix the valuation for taxation cannot be set aside upon the ground that the complaining party is required to pay more than his just proportion of the taxes levied against him, if all the property of the county had been fairly and regularly assessed, where there is no evidence of fraud and no gross error in the system on which the valuations were made by the board of equalization.

(Syllabus by the Court.)

*Error from District Court, Garfield County;*
*J. W. Steen, Judge.*

Bill by the Garfield Exchange Bank of Enid against Ira Williams, County Clerk of Garfield County. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions to dismiss.

*Chas. N. Harmon,* Co. Atty., *Chas. West,* Atty. Gen., and *C. J. Davenport,* for plaintiff in error.

*Parker & Simons* and *Roberts, Curran & Otjen,* for defendant in error.

KANE, J.  This suit was commenced in the district court of Garfield county by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, for the purpose of enjoining him, as county clerk, from spreading upon the tax rolls of said county certain taxes levied against the Garfield Exchange Bank.  The petition alleged, in substance: That in the year 1910 it was understood and agreed between the members of the board of equalization of the city of Enid and the city assessor that the property of said city should be assessed at 60 per cent. of its fair value, and that it was understood by the said assessor and the members of said board of equalization of the city that all of the township assessors of the county of Garfield would make the assessment of all property within said county upon the same basis.  That notwithstanding said agreement the county board of equalization, with full knowledge thereof, ordered the plaintiff's property, together with the property of all the banks of the city of Enid in said county, raised and assessed at its full value.  That all the property of the said city of Enid, with the exception of other banking corporations, was systematically and intentionally assessed under said agreement and understanding by said assessor, under its fair cash value, and not exceeding 60 per cent. thereof.  That by said action the Garfield Exchange Bank of Enid was discriminated against and compelled thereby to bear a greater proportion of the burdens of taxation in proportion to its property than other individual taxpayers in the city.  A demurrer to the petition was overruled, whereupon defendant filed an answer, denying generally the allegations therein, and further alleged that the plaintiff had not availed itself of the remedies provided by the statutes of Oklahoma for the correction of any wrong, if it felt aggrieved, and that the assessment of the plaintiff was in truth and in fact below the fair market value of its property, and gave to plaintiff an advantage over other taxpayers upon personal property in the county of Garfield for the year 1910.  Upon the issues thus joined the case was tried

to the court, and after the introduction of plaintiff's evidence the defendant demurred thereto for the reason that the same did not establish a cause of action for the relief sought, which demurrer was overruled. Thereupon evidence was introduced on behalf of the defendant, at the close of which defendant demurred to the evidence as a whole for the reason that it did not prove facts sufficient to constitute a cause for action in favor of the plaintiff, which demurrer was reserved until the final argument of the case. Thereafter the cause was argued to the court; and thereafter the judge of said court filed in said cause an opinion, holding that the plaintiff was entitled to the relief prayed for, and peremptory writ of injunction to that effect was entered, to reverse which this proceeding in error was commenced.

The Attorney General in his brief presents his grounds for reversal under the following subheads:

(1) The court erred in overruling defendant's demurrer to plaintiff's petition because it appears that the plaintiff had a plain, speedy, adequate remedy at law: (a) By appearing before the city equalization board and presenting the facts in its possession and having the individual assessments of the city of Enid increased or decreased so as to comply with the Constitution and laws pertaining to assessment of property. (b) By appearing before the county equalization board and presenting facts in its knowledge and asking for an increase of the valuation of the property of the city of Enid other than banks. (c) By appealing from the action of the county board to the county court as provided by section 1, c. 87, Sess. Laws 1910. (d) By appealing from the action of the city board to the county commissioners under section 7616, Comp. Laws 1909 (Rev. Laws 1910, sec. 7366). (e) By invoking the power of the state board to equalize and correct the property values. (f) Because the petition did not allege that plaintiff's property is returned at its fair cash value. (g) Because it did not allege that the taxes which the petition shows to be due have been paid.

(2) The court erred in overruling the demurrer to plaintiff's evidence because the evidence does not show there was fraud or misconduct equivalent to fraud on the part of the county board of equalization.

It is well settled that, whenever the statutes of a state provide a mode by which appeals may be taken from the assessment or equalization of property, that remedy is exclusive. Equitable remedies cannot be resorted to. Cooley on Taxation (3d Ed.) p. 1382; *Carroll v. Gerlach,* 11 Okla. 151, 65 Pac. 844; *Finney County v. Bullard,* 77 Kan. 349, 94 Pac. 129, 16 L. R. A. (N. S.) 807; *Western Union Tel. Co. v. Douglas County et al.,* 76 Neb. 666, 107 N. W. 985; *Stanley v. Board of Supervisors,* 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000; *Shelton v. Platt,* 139 U. S. 591, 11 Sup. Ct. 646, 35 L. Ed. 273; *Pittsburg, etc., Ry. Co. v. Board of Public Works,* 172 U. S. 32, 19 Sup. Ct. 90, 43 L. Ed. 354.

Section 7616, Comp. Laws 1909 (Rev. Laws 1910, sec. 7366), provides that the city board of equalization shall meet on the third Monday in April to examine the assessment rolls of the city, "and to hear all complaints of persons who shall feel aggrieved by their assessment, and to correct, equalize and adjust the assessment therein by increasing or decreasing individual assessments or the aggregate assessments of such city * * * and if necessary they may require a reassessment of any or all the property therein, such correction, equalization, adjustment, or reassessment shall be for the purpose of causing the same to be assessed at its fair cash value as herein defined, and the decision of said board shall be final as to individual assessments unless an appeal is taken to the board of county commissioners on or before the first Monday in June next following. The decision of the board of county commissioners shall be final in all cases."

Section 7617 (Rev. Laws 1910, sec. 7367) of the same chapter provides:

"For the purpose of equalizing, correcting and adjusting the assessment rolls in their county between the different

townships, by increasing or decreasing the aggregate assessed value of the property or any class thereof, in any or all of them to conform to the fair cash value thereof as herein defined: Provided that the county board of equalization may for the purpose of having the assessment of any city, town, village or township corrected, order a reassessment of any or all of the property therein."

Section 1, c. 87, Sess. Laws 1910, provides that:

"Appeals may be taken from all county boards of equalization to the county court of the county wherein the assessment is made, within thirty days after the adjournment thereof: * * * Provided, that, no matter shall be reviewed on appeal which was not presented to the board appealed from, and provided further, that every appeal shall state specifically the objections to the assessment and the relief sought."

Section 2 provides that:

"During the pending of such appeal, the party appealing shall not be required to pay taxes upon the property in regard to the assessment of which the appeal is taken."

And section 3 provides that:

"The proceedings before the board of equalization and appeals therefrom shall be the sole method by which assessments or equalizations shall be corrected or taxes abated. Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made."

There is no contention that any of these provisions of law have been complied with or that the general rule hereinbefore stated is not correct. But the contention is made that, inasmuch as section 1, *supra*, did not go into effect until ten days after the adjournment of the county board of equalization, that remedy was not available for the reason that the act is not retroactive and therefore did not apply to the case at bar. This contention, however, does not apply to the failure of the plaintiff to appeal from the action of the State Board of Equalization if its assessment was still in an unsatisfied condition. It had full knowledge of its grievance against the county board long prior to the meeting of the

State Board, and the latter board had full authority in the premises to equalize, correct, and adjust by increasing or decreasing the assessed value of any class of property to conform to the fair cash value. *In re Appeal of J. W. McNeal,* 35 Okla. 17, 128 Pac. 285, handed down this term. Indeed, without anything to the contrary appearing, it is a fair presumption that, under the power granted to it by the Legislature, the State Board remedied the lack of uniformity, which seems to be the plaintiff's only ground for complaint.

Mr. Desty, in his work on Taxation, vol. 2, pp. 661, states the result of failure to follow remedies provided by law as follows:

"Equity will not restrain the collection of a tax when there is a full and adequate remedy at law, even though fraud be alleged in the bill. * * * Where a mode is prescribed, and a tribunal established by law to provide against an illegal tax, complainant has a full and adequate remedy at law."

Section 8, art. 10, Williams' Const. Okla. provides that:

"All property which may be taxed *ad valorem* shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. * * *"

Under a statute to the same effect, it was held by the Supreme Court of the territory that the petition must allege that plaintiff's property was returned at its fair cash value. *Alva State Bank v. Renfrew,* 10 Okla. 26, 62 Pac. 285. The syllabus reads as follows:

"Where a party seeks to enjoin the collection of a tax which he claims is excessive and illegal, arising from either the action of the assessor or the board of equalization in raising the returned valuation thereof, it is not only necessary to allege in the petition, but it must be proved upon the trial, that the property was listed and returned for assessment at its true cash value before a court of equity will interfere and enjoin the collection of the tax claimed to be excessive and void."

This is an application of the maxim, "He who seeks equity must do equity."

In the case of *Streight et al. v. Durham, Treasurer*, 10 Okla. 361, 61 Pac. 1096, the petition alleged, in substance, that the plaintiffs had returned their property in the sum of $1,235, and that that was the actual cash value of all the personal property owned by them; that the board of equalization of the city raised this value to $2,035, and that this was "fraudulently and unlawfully done and is inequitable and out of proportion to the values placed on other personal property in the said city of Shawnee and is an unjust and unequal discrimination against these plaintiffs as compared with the values placed upon the personal property of other residents and taxpayers of said city and unjust, illegal, and void." The court below dissolved a temporary injunction granted to the plaintiffs and dismissed the action, and the Supreme Court of the territory affirmed that judgment.

We have examined the evidence with considerable care and we find nothing that tends to show fraud or misconduct equivalent to fraud on the part of the county board of equalization. The record of the county board shows that:

"The assessments of all banks in Garfield county, Okla., are hereby equalized between the different townships and cities by making the assessments of said banks equal to the amount of their capital stock, surplus, and undivided profits."

The duty of the county board is to equalize, correct, and adjust assessments between the different townships by increasing or decreasing the aggregate assessed value of the property or any class thereof in any or all of them to conform to the fair cash value thereof. Section 7558, Comp. Laws 1909 (Rev. Laws 1910, sec. 7318), places the property of banks in a class by itself and names three items which must be taken into consideration in determining their value. The rule seems to be that the judgment of a board of equalization empowered to fix the valuation for taxation cannot be set aside upon the ground that the complaining party is required to pay more than his just proportion of the entire taxes levied, on account of lack of uniformity in the assessment of the various

classes of property, where there is no evidence of fraud and no gross error in the system on which the valuations were made. *Railway Co. v. Backus,* 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; *Adams Express Co. v. Ohio,* 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683; *Coulter v. L. & N. Ry. Co.,* 196 U. S. 599, 25 Sup. Ct. 342, 49 L. Ed. 615; *C., B. & Q. Ry. Cr. v. Babcock,* 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636; *Board of Co. Com'rs, Finnery Co. v. Bullard, supra; Maish v. Arizona,* 164 U. S. 599, 17 Sup. Ct. 193, 41 L. Ed. 567; *Western Union Tel. Co. v. Trapp, State Auditor, et al.,* 186 Fed. 114, 108 C. C. A. 226. Delivering the opinion of the court in the last-cited case, Judge Riner said:

"The record shows that there was a reduction of the valuation on real estate and other property assessed by the township officers and after local equalization by the county commissioners certified by the counties to the State Auditor. But this was not true of all the property. There was an increase of 4.3 per cent. on pleasure carriages, 7.9 per cent. on watches, 85.3 per cent. on plate and jewelry, 41.2 per cent. on pianos, a reduction of 21.3 per cent. on land, 16.9 per cent. on town lots, and an average reduction upon all property of about 17 per cent. This increase and decrease was based on the assessed valuation fixed by the various county boards of equalization. There is testimony in the record tending to show the actual cash value of property in the various counties, and this testimony, taken in connection with the original assessments as returned by the county assessors and the general changes made by the state board of equalization, is quite persuasive that the board did not reach exact cash values. But it falls far short of establishing that there was any actual fraud on the part of the board, or that the individual members were actuated by any purpose of intentionally undervaluing the property returned by the several counties for the purpose of making the complainant bear more than its just share of the burden of taxation."

The judgment of the court below is therefore reversed, and the cause remanded, with directions to dismiss the bill.

All the Justices concur.