**CITY OF TULSA et al. v. PURDY.**

No. 8991—Opinion Filed July 30, 1918.

Rehearing Denied Sept. 12, 1918.

(174 Pac. 759.)

1. **Cemeteries—Acquisition of Lands—Powers of City.**

The power granted by a city charter to the municipality, empowering the purchase of grounds for cemetery purposes outside the city limits, is not inconsistent with the power granted to municipalities generally, by a public statute, empowering the purchase of lands for cemetery purposes within the city limits.

2. **Appeal and Error—Review of Evidence.**

In all actions which were cognizable only in a court of chancery, it is the duty of this court to consider the whole record, and weigh the evidence, and when the judgment of the trial court is clearly against the weight of the evidence, render, or cause to be rendered, such judgment as the trial court should have rendered.

3. **Injunction—Adequate Relief at Law.**

A. purchased property, built his home, and sunk a water well on property adjacent to an established cemetery, owned and controlled by a city, within the corporate limits of the municipality; later, when the municipal authorities purchased adjoining property for the purpose of extending the cemetery grounds and improving the same, bringing the burying grounds 100 feet nearer to A.'s premises, A. sought to enjoin the city's use

of the purchased premises on the ground of want of power in the municipality to purchase the land for such use, and that such use would work irreparable injury to him, inasmuch as it would result in rendering the water in his well unfit for domestic purposes. Held, that under the facts set out in the opinion no grounds for injunctive relief were shown, and such relief should have been denied, and, further, that the injury threatened was easily calculable in dollars and cents, and full compensation might be rendered therefor in a legal action for damages.

(Syllabus by Galbraith, C.)

Error from Superior Court, Tulsa County; M. A. Breckenridge, Judge.

Action by F. W. Purdy against the City of Tulsa, its Board of Commissioners, the Cemetery Board, and other city officials, for an injunction. There was judgment for the plaintiff; defendants bring error. Reversed.

John B. Meserve and John R. Woodard, for plaintiffs in error.

Pat Malloy and Edward P. Marshall, for defendant in error.

Opinion by GALBRAITH, C. This is an appeal by the city of Tulsa and its municipal officers from an order of injunction, perpetually restraining them from the use and occupation of a tract of land adjoining the municipal cemetery located within the incorporated limits of said city, and purchased for the purpose of enlarging and improving the cemetery grounds. The defendant in error, as plaintiff in the trial court, alleged that he was a property owner and lived with his family in the vicinity of the cemetery and adjoining the property purchased, and alleged the want of authority in the municipality, or its officers, to purchase such land for such purpose, and also charged irregular procedure in acquiring the land, and further that the use of the land for the purpose intended would work to his irreparable injury and damage. The allegations as to his individual injury, as set out in his petition, are as follows:

"That said plaintiff owns, and maintains his home on said lots 18 and 17, inclusive, in said Oaklawn addition in which home plaintiff, with his family, reside; that upon said property there is a well from which he and his family are supplied with water for drinking and domestic purposes; that the lands of said plaintiff are much lower in elevation than the lands purchased and contracted to be purchased by said city, and that water flows from the lands so purchased, or contracted to be purchased, by said city, directly over and upon the lands of the plaintiff above described, and all water drains in the direction of plaintiff's land from the lands purchased or contracted to be purchased, by said city; that, if the bodies of dead persons were permitted to be interred in and upon said lands by the city purchased and contracted to be purchased for cemetery purposes, in time the same would decay and disintegrate, thereby causing the undersoil of said lands to become saturated and filled with poisonous, noxious, and infectious matters; that the water seeping into said undersoil would seep to the lower level of plaintiff's land, thereby entering the water well of the plaintiff and the vein of water supplying said water well, and poison and pollute the plaintiff's supply of water for drinking and domestic purposes, to the great jeopardy and hazard of the health and lives of the plaintiff and his family; that the water well of plaintiff is but a short distance from the lands purchased and contracted to be purchased by said city for cemetery and graveyard purposes, and the danger of the poisoning and pollution of the waters thereof would be imminent."

The petition closes with the following general allegation:

"That such acts upon the part of said city and its officers and the payment of said moneys by the order of commissioners, etc., * * * will cause irreparable damage and injury to this plaintiff and his property and to the citizenship of said city. That plaintiff has no plain or adequate remedy at law."

The only witness who testified at the trial to any actual or threatened injury to the plaintiff was the plaintiff himself. His testimony on this subject was as follows:

"Q. Describe as accurately as you can where Oaklawn Cemetery is with reference to your home. A. Oaklawn Cemetery is situated something like 300 feet south of me, east and west; a row of city lots is between, 140 feet wide. Q. Is that the old cemetery? A. Yes, sir; the old cemetery. Q. Does anything intervene between where you live and the cemetery, Oaklawn Cemetery? A. A street between and 140-foot lot, city lot. You mean distance between us? Q. Yes, sir; anything intervening between where you live. A. Yes, sir, Eighth street and a row of lots 140 feet deep. Q. About how wide is the street? A. I think about 60 feet wide. Q. The distance between you and the cemetery is about 200 feet? A. I would guess that; yes, sir. Q. An alley in addition to the 200 feet. A. Yes, sir; that is my understanding. Q. What lot do you live on? A. What lot? Q. Yes, sir. A. On the corner. Q. Lot 17? A. Yes, sir. Q. How many lots have you there? A. I have ten. Q. Are they all together? A. No, sir; I have two lots across Q. You have eight lots on the north side? A. Yes, sir; and two on the south. Q. Ten lots all together? A. Yes, sir. Q. Who lives there with you? A. My wife and six children. Q. How old are the children? A.

Ranging from 23 years down to 8 years old. Q. All live with you there? A. Yes, sir. Q. What is your source of deriving a water supply? A. We have a well. Q. How deep is the well? A. Between 40 and 50 feet. Q. What kind of a well is it? A. A bored well. We have a fine supply of water. Q. What do you use that water for? A. For all purposes, drinking purposes. Q. Cooking purposes? A. Yes, sir. Q. Bath purposes? A. Yes, sir; and laundry and everything else. Q. What sized home have you there? A. I have a ten-room house. Q. About what is the value of your property there? A. Well, the house cost me—. Q. What is the value of it now without the cemetery being considered? A. Four thousand dollars cash value. Q. That is just the two lots your house is on? A. Yes, sir. Q. What is the rest of your property worth? A. I suppose $7,000. Q. All together? A. Yes, sir. Q. The vacant lots? A. Yes, sir. Q. Mr. Purdy, how long have you lived there? A. I think 7 years this last June. Q. Seven years? A. Yes, sir. Q. Do you know what direction the land slopes from the cemetery? A. About middle way from the cemetery it slopes toward my property; it is on a ridge, and the other side slopes the other way. Q. Do you know where this strip of land that it is proposed to add to Oaklawn Cemetery is? A. Just south, across Eighth street. Q. Does it front on the street? A. Yes, sir. Q. North and you front on the street south? A. Yes, sir. Q. As I understand you, just 60 feet between you? A. Yes, sir, width of the street. Q. How far would you say it is from your well to the north boundary of this strip of land that is proposed to be annexed to the cemetery? A. About 100 feet. Q. About 100 feet? A. The street is 60 feet wide, and I suppose my well is 35 or 40 feet back on my lot. Q. You think about 100 feet? A. Yes, sir; something like that. Q. In what direction does the land slope, if at all, this proposed strip they propose to annex to Oaklawn cemetery, toward you or away from you? A. Towards me. Q. Is your land as high as this proposed strip? A. No, sir; lower. Q. Approximately in your judgment how much? A. I suppose 10 or 15 feet. Q. Ten or 15 feet?"

On redirect examination he testified as follows:

"Q. What would be the effect on the value of your property if that property was put in use as a burial ground, if you know? A. It would ruin it.

"By the Court: Q. Are you acquainted with the values in this vicinity? A. Yes, sir. Q. And the surrounding country? A. Yes, sir

"By the Court: Let him answer it. Q. Are you acquainted with the value of property out there? A. Yes, sir. Q. If this tract of land was used for burial purposes, what, if any, effect would it have on the value of

your property and property in the immediate vicinity? A. It would ruin it as a residence property. Q. It would reduce the value? A. Yes, sir. Q. How much? A. Seventy-five per cent."

On recross-examination he testified:

"Q. How much would that be? A. I would consider it would damage my property 75 per cent. Q. How much in dollars I mean? A. Figure it yourself. Q. You do the figuring, you are testifying—how much do you say it will damage you in dollars and cents? A. Five thousand dollars. Q. Five thousand dollars? A. Yes, sir. Q. That would cover everything? A. Yes, sir."

Much of the other evidence tends to sustain the claim of the plaintiff that his property and the property acquired for the addition to the cemetery adjoining his land is located in a basin, and his well is supplied with water from such basin, and that the character of the soil is such that the water falling on the ground would accumulate and be held in this basin, and if a part of it were contaminated, the water in the entire basin would become contaminated, and the use of this property for burial purposes would in time render the water in the plaintiff's well unfit for use.

At the close of the plaintiff's evidence the defendant demurred thereto on the ground that the same did not support the allegations of the petition, and on the further ground that such evidence did not state sufficient . . s to en it e the plaintiff to the equitable relief sought, or to any equitable relief. This demurrer was overruled and exceptions saved, and this ruling is urged as error.

It is not disputed that Oaklawn Cemetery is owned and controlled by the municipal government of the city of Tulsa; that it is located within the incorporated limits of the city; and that the cemetery was located and established prior to the time that the defendant in error acquired his property in that vicinity. It is also admitted that the city of Tulsa was operating under a special charter adopted by a majority vote of its electors, and approved by the Governor on the 5th day of January, 1909. The pertinent provisions of the charter are as follows:

Article 2, § 2, reading as follows:

"That the specifications of particular powers herein authorized shall never be construed as a limitation upon the general powers herein granted, it being intended by this charter to grant and bestow upon the inhabitants of the city of Tulsa full power of self-government, and it shall have and exercise all powers of municipal government not prohibited to it by this charter, or by some

general law of the state of Oklahoma, or by the provisions of the Constitution of the state of Oklahoma."

And article 11, § 22, provides:

"All questions arising in administering said city government, and not provided for in this act, shall be governed by the state law in such cases made and provided."

And article 2, §1, under general powers, reads as follows:

"The city of Tulsa made a body politic and corporate by this charter, shall have perpetual succession, may use a common seal, may sue and be sued, may contract and be contracted; with, implead and be impleaded in all courts and places, and in all matters whatever may take, hold and purchase lands as may be needed for corporate purposes of this city, and may sell any real estate or property owned by it; perform and render all public services, and, when deemed expedient, may condemn property for public use; and may hold, manage and control the same."

And such section proceeds as follows:

"The city of Tulsa shall have power to regulate burial grounds, crematories and cemeteries." etc.

An such section proceeds as follows:

"The city of Tulsa shall have power to purchase, hold and pay for lands not exceeding one hundred and sixty acres in one body outside the limits of such city, for the purpose of the burial of the dead."

· 22 Session Laws 1915, pertaining to the question, provides:

"In any case where there is now an established cemetery, situate within the corporate limits of any city or town, and now used or occupied for burial purposes, and there are platted lots or parcels of land contiguous to such cemetery and located or lying between such cemetery and a public street or highway open and used for public travel, the mayor and city council or commissioners of any such city, or the board of trustees of any such city, or the board of trustees of any such town, are hereby authorized to acquire any such lots or parcels of land, by purchase or donation, for additional park or cemetery purposes, and when so acquired, the title shall vest in the municipality," etc.

Now it is argued on behalf of the defendant in error that the provision of the charter authorizing the city to purchase land for cemetery purposes outside of the city limits is a grant of power for this particular purpose, and is a denial of the power to purchase land within the city limits for such purposes, and that there is a conflict between the charter and the Session Laws of 1915, above set out. The former authorizing the purchase of land for cemetery purposes without the city limits, and the latter authorizing such purchase within the city limits and that this conflict being in regard to a municipal question, the provision of the charter must control, and therefore the city was without power to acquire this land within the city limits for cemetery purposes. This position is not sound for two reasons: First. The subject-matter of the provision is not a strictly municipal question, a cemetery not being a municipal question simply. It is one that affects the public in general, and not only the citizenship of the municipality, the general public having the right of interment in the cemetery. Second. There is no conflict between the provision of the charter and that of the statute, since the charter provision was a grant of specific power, that is, the power to acquire property for cemetery purposes without the city limits, and the legislative act was a grant of additional power, namely, authority to purchase land for such purpose within the city limits. The exercise of these powers is entirely consistent. Conferring one in no wise conflicts with the exercise of the other. One or both may be exercised as the municipal authorities may consider advantageous to the public welfare.

The question raised by the assignment of error under consideration is governed and is, we think, controlled by the decision of this court in Clinton Cemetery Ass'n v. McAttee, 27 Okla. 160, 111 Pac. 392, 31 L. R. A. (N. S) 945; that is, whether or not under the pleadings and the evidence the plaintiff below was entitled to injunctive relief. It was said in that opinion relative to this question:

"Was the petition sufficient to withstand the general demurrer? Eliminating the conconclusions of law, all that is well pleaded is that the 30 acres of land upon which it is proposed to establish the cemetery or burying ground is on the opposite side of the road from his dwelling; that the cemetery grounds are more elevated and drain toward said dwelling house, cistern, and well, and that, unless defendants are restrained, they will proceed to complete the laying out and establishing the said burying ground. We have, however, examined the evidence, and it does not make as strong a case as is pleaded; for the evidence shows that only about 5 acres of the 30 acres of the proposed cemetery ground drain toward the plaintiff's dwelling, cistern, and well. Under the authorities hereinbefore quoted from, this petition was insufficient, and the demurrer thereto should have been sustained."

It will be recalled that the defendant in

error purchased his property, sunk his well, and established his home near the old cemetery that had been located and established for years, knowing that the cemetery grounds only embraced an area of 40 acres, and that this area was not sufficient to answer the demands of a growing city for all time, and that it would be necessary sooner or later to enlarge the cemetery.

The testimony of the expert introduced by the defendant in error tends to establish the fact that if the defendant in error's well was not polluted by the old cemetery, it would be expected to be polluted within the course of a few years. The land purchased and contracted for and intended to be dedicated to the enlargement of the burying ground brought it only about 100 feet nearer the defendant in error's premises, and to that extent might hasten the expected result of the pollution of his water well. He must have known that the necessity of the city would demand, in a few years, an increase of the area of the burying ground. However, the evidence of the defendant in error, set out hereinbefore shows that the threatened injury was subject to exact compensation in damages, and shows the exact amount of the injury that would be sustained if the property purchased and contracted for by the city was placed to its contemplated use. The testimony does not show that any actual damage had been inflicted, or that any actual injury had been sustained, but the plaintiff testified to the exact amount of injury that would result to him from the consummation of the threatened acts.

It is not disputed in the evidence that the property which the city had acquired and contracted for was of little or no value except as an addition to the cemetery, and that for years prior to its purchase by the city it had been neglected and permitted to grow up in weeds, and that it was valuable to the cemetery association in order to enlarge the burying ground and enable them to improve this land, as well as to improve and beautify the cemetery. This was in the interest of the public improvement and advancement, and ought not to be stopped even if the use of one man's water well was destroyed thereby, inasmuch as the amount of actual damage sustained by the owner of the well could be easily ascertained and computed. Neither the allegation of the petition nor the proof showed the plaintiff below entitled to injunctive relief. This being a case of equitable cognizance, it is the duty of this court to consider the whole record, to weigh the evidence, and when the judgment of the trial court is clearly against the weight of the evi-

dence render, or cause to be rendered, such judgment as the trial court should have rendered. Schock et al. v. Fish, 45 Okla. 12, 144 Pac. 584; Crump v. Lanham, 67 Okla. 33, 168 Pac 43.

We are convinced, upon a consideration of the whole record, that the judgment of the trial court is clearly against the weight of the evidence; that the evidence shows that the plaintiff was not entitled to injunctive relief; that the actual damage threatened by the acts of the defendants was capable of being computed in dollars and cents, and full compensation is therefore recoverable in an action at law for damages.

The judgment appealed from is reversed, and the cause remanded to the trial court, with directions to sustain the demurrer to the plaintiff's evidence and to enter judgment for the defendants for their costs.

By the Court: It is so ordered.