Note.—See under (1) 30 Cyc. pp. 1570, 1575, 1584. (2) 30 Cyc. p. 1588. (3) 30 Cyc. pp.1587, 1588.

---

## CITY OF ENID v. CHAMPLIN REFINING CO. et al.

No. 15536—Opinion Filed Oct. 6, 1925.

**1. Statutes—Construction — Legislative Intent—Whether Mandatory or Directory.**

The intention of the Legislature is the cardinal consideration in the construction of statutes, and whether a particular provision is mandatory or directory is to be determined from the language used and the purpose in view.

**2. Same.**

A directory provision within a statute is one the observance of which is not necessary for the validity of the proceeding, and, generally speaking, these provisions which do not relate to the essence of the thing to be done, and as to which compliance is a matter of convenience rather than substance, are directory, while the provisions of substance are mandatory.

**3. Same—Statute Prescribing Procedure for Refunds on Taxes Erroneously Assessed.**

Section 9674, Comp. St. 1921 (Sess. Law

1916, p. 22, section 1), provides: "The board of county commissioners of each county is hereby authorized to hear and determine allegations of erroneous assessments, mistakes or errors made in assessing or preparing the tax roll or in the description of land or other property, before the taxes have been paid, on application of any person who shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such error," etc. Held, the provision to show by affidavit good cause, etc., is directory merely, and where the board acts upon such application, the absence of the affidavit does not render their order or finding void.

**4. Appeal and Error—Review of Equity Case—Affirmance.**

In an equity case it is within the power of the Supreme Court to consider the evidence and render judgment thereon, but the rule is well established that the Supreme Court will not interfere with the judgment of the lower court, unless the same is clearly against the weight of the evidence. In this case the evidence examined, and the same wholly fails to sustain the allegations of the plaintiff's petition or to entitle it to the relief prayed for.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by the City of Enid against the Champlin Refining Company and the Board of County Commissioners of Garfield County and R. F. Bennett, County Treasurer, praying a review of a correction of the assessment of the property of the Champlin Refining Company by the County Commissioners and to revoke the orders of the County Commissioners and directing the County Commissioners to reassess the property in accordance with the original valuation accepted by the Board of Equalization, and to assess the same for taxes within the City of Enid and for a restraining order enjoining the County Treasurer from paying out any moneys received as taxes on said property for the year 1921. Judgment for defendants, and plaintiff appeals. Affirmed.

A. E. Underwood and F. E. Chappell, for plaintiff in error.

Harry O. Glasser and McKeever, Moore & Elam, for defendants in error.

Opinion by RUTH, C. In this opinion the city of Enid will be designated as plaintiff, the Champlin Refining Company as defend-ant, and the board of county commissioners as the board.

Plaintiff's petition alleges the county assessor fixed the valuation of defendant's real estate for the year 1921 at $105,000, and the value of defendant's personal property at $379,730. That the county board of equalization fixed the value of defendant's real estate at $85,000, and its personal property at $379,730, and this valuation was approved by the state board of equalization. That on February 6, 1922, defendant filed its application with the board of county commissioners, asking a correction of this assessment by having the same assessed in Enid township and not for city taxes. After hearing before the board, a correction was awarded and certificates of error numbered 277 and 278 were issued and the county treasurer of Garfield county was directed to accept the same as and for payment of taxes previously assessed against the defendant, and re-assessment certificate numbered 391 was issued wherein the valuation of the real estate of the defendant for the year 1921, being "tract" No. 1, is fixed at $388,784, and is assessed as being in Enid township and not assessed for municipal taxes for the city of Enid. That the personal property of defendant was reassessed by certificate No. 390 in accordance with certificate of error No. 277, and assessed as being in the city of Enid and the valuation of the personal property was placed at $75,946.

Plaintiff alleges the board had no authority to correct any assessment previously made by the county assessor. Plaintiff further alleges that all of the property of defendant listed for taxation is within the city limits of the city of Enid; that all of the land occupied by the defendant was platted into lots and blocks at the time it was admitted to the city of Enid; that the plat of the lands has since been vacated and defendant acquired a tract of land in excess of 40 acres by the purchase of adjoining tracts, and is not entitled to be relieved of taxes in the city of Enid on the ground that its land comprised a tract in excess of 40 acres; that the lands occupied by defendant are not used for agricultural or farming purposes, but are covered by a refinery, and buildings, tanks and other equipment.

Petition then alleges that unless enjoined, the county treasurer will receive the taxes and pay the same to the proper authorities of Enid township, and prays the court to

review the record of the proceedings of the board, wherein the assessment was corrected and make an order revoking the order of the board, and directing them to reassess said property in accordance with the original valuations accepted by the state board of equalization, and assess the same for taxes within the city of Enid, and that the county treasurer be enjoined from paying out any moneys received as taxes on said property for the year 1921, until further order of the court.

The application of the defendant to the board of county commissioners, omitting formal parts, was as follows:

"That said site and equipment were assessed by C. B. Longcor, county assessor, within the city of Enid and for city tax purposes, and by reason of the fact that said site was in excess of 40 acres and all lots and blocks and streets and alleys thereon had been vacated by the order of the district court of Garfield county, the same was not subject to assessment for city purposes, but should have been assessed within Enid townhip in conformity with section 500 of the Revised Laws of Oklahoma 1910, and your petitioner asks that the proper order be made correcting said assessment in order that the taxes upon said property for 1921 may be paid to the proper use."

A temporary injunction was awarded and defendant filed its demurrer, which was by the court overruled, and exceptions saved by defendant.

Plaintiff filed its motion to dismiss the application of defendant filed with the board of county commissioners, and the same was by the court overruled.

At the conclusion of all the testimony, the court made certain findings of fact and conclusions of law, which summarized are as follows: That the lands defendant now owns were many years ago platted, laid off into lots, blocks, streets, and alleys and became a part of the city of Enid; that on March 16, 1916, on application of the Colworth Development Company (owners of the land at that time), the district court of Garfield county vacated, set aside, and held for naught the Colworth addition to the city of Enid, the same being the land in dispute in this case; that the lands, though composed of different tracts, are adjacent to each other, and in the aggregate amount to more than 40 acres; that the lands with all of the permanent improvements thereon, are located and situated in Enid township, Garfield county, for taxable purposes, and were not at the time when the assessment was made, over which this contention is now made, subject to taxation by the city of Enid. The court further found that when this property was given in for taxation, it was given in by the owner to the assessor, at which time the assessor had constructive and actual notice that said property was not within the corporate limits of the city of Enid for taxable purposes; that the matter was thoroughly discussed by and between the assessor and the owner at that time; that for some "unexplainable" reason, the assessor did assess it as being within the limits of the city.

The court then concludes as a matter of law that the assessor had no authority at that time to assess the property as property within the city of Enid, and his acts in so doing were absolutely illegal and void, and the only question in the case is whether or not the city of Enid had a right to assess the property or to collect the tax arising from said property, and to appropriate it to its own use; that the assessment in dispute is not an erroneous assessment, but an illegal assessment; that defendant availed itself of the proper remedy by going before the board and applying to have the assessment corrected so as to show that it should have been credited to the township instead of the city, and it was unnecessary to have his application verified.

The court rendered judgment sustaining the action of the board in correcting the assessment, and dissolved the injunction, and plaintiff appeals.

The brief of plaintiff in error in no manner complies with the first provision of rule 26 of the rules of the Supreme Court, nor with the last provision of said rule, requiring the specifications of errors complained of to be separately set forth and numbered, and the argument and authorities in support of each point relied on, in the same order, with strict observance of rule 7, but we find in the beginning of the argument the following:

"It is contended by the plaintiff in error that the findings and judgment of the court was (?) contrary to the evidence and also that the findings and the judgment of the court was (?) contrary to the law governing the question involved in the appeal. We desire to present the alleged errors of the court below together under the following proposition: First. That the assessment was legally made by the county assessor assessing the property within the city of Enid and that the board of county commissioners had no authority to change the

same or the amount thereof, and that the only remedy of the Champlin Refining Company was through the board of review and appeal from the board of review, and having failed to exercise their rights under this remedy they (?) cannot resort to any other procedure."

This being a proceeding in equity, this court will examine all the evidence for the purpose of ascertaining whether the evidence reasonably sustains the judgment. City of Tulsa v. Purdy, 73 Okla. 98, 174 Pac. 759; Turben v. Douglas, 76 Okla. 78, 183 Pac. 881.

In an equity case, it is within the power of the Supreme Court to consider the evidence and render judgment thereon, but the rule is well established that the Supreme Court will not interfere with the judgment of the lower court unless the same is clearly against the weight of the evidence. Nowka v. West, 77 Okla. 24, 186 Pac. 220.

The only witness produced by the plaintiff city was one J. F. Walker, a deputy county assessor, who identified the assessment sheet, a blue print, showing the location of the Champlin Refining Company's property in Garfield county, and an assessment sheet showing the property was assessed as in Enid city in 19⸳⸳. The witness further testified he did not know whether the property was in the city of Enid or not, and upon this testimony the plaintiff rested its case.

Plaintiff did not offer in evidence the application of the defendant to the board of county commissioners to have the erroneous assessment corrected and the property assessed in Enid township instead of the city of Enid, nor did it introduce in evidence the order complained of; the certificates of error Nos. 277 and 278, nor the reassessment certificate No. 391, issued by the board of county commissioners, re-assessing the property as in Enid township, and so far as the evidence discloses, the application, orders, certificates of error, and certificate of re-assessment are nonexistent.

No evidence was offered by plaintiff that the assessment was legally made by the assessor O. B. Longcor, and the testimony of H. H. Champlin, president of the defendant company, is uncontroverted that after he had returned the company's property for assessment in 1921, and sworn to the return, as shown by plaintiff's "Exhibit A," showing approximately $80,000 worth of personal property, and had a thorough understanding with the assessor that the real estate was not within the city of Enid, the assessor arbitrarily changed the figures and struck approximately $300,000 from the real estate and transferred it to personalty, assessing tanks, stills, and buildings as personalty, and assessing it for taxes within the city.

While this change did not alter the total assessed value of the porperty, it appears to be a deliberate attempt to subject property to an illegal city tax. The defendant was never advised of this change and did not learn of the same until it went to pay its taxes, when it filed its application with the board of county commissioners, which board immediately issued its certificates of erroneous assessments and fixed the value of the real estate at $388,740, and the personal property at $75,946. It further appears that up to 1916 this land was known as the Colworth addition, and in 1916, upon a proper proceeding in the district court of Garfield county, upon the petition of the Colworth Development Company, the district court vacated the streets, avenues and alleys in the Colworth addition, and directed the lands do not be assessed for city taxes, but should be taxed as in Enid township.

The Champlin Company was organized in 1920, and acquired this land and erected its refinery thereon, and returned its property, under oath, notwithstanding which the assessor attempted to assess the property for the years 1922 and 1923 as in the city of Enid, and the defendant, being a foreign corporation, was compelled and did file its bill of complaint in the United States District Court for the Western District of Oklahoma, and that court issued its order perpetually enjoining the county assessor and county treasurer for assessing the real estate and attempting to collect taxes thereon for city purposes for the city of Enid for the years 1922 and 1923. It thus appears the defendant used every means and invoked the jurisdiction of every board and court open to it, to prevent the perpetration of a fraud against it.

Plaintiff further insists in its brief that the board of county commissioners had no authority to change the assessment, and if the defendant felt aggrieved because of the erroneous assessment, its proper procedure was through the board of review, and an appeal from such board's findings. Section 9671, Comp. St. 1921 (Sess. Laws 1910-11, p. 334, sec. 11) creates a board of equalization and provides said board shall meet on the first Monday in June of each year for the purpose of equalizing taxes over the

county, and provides that any person who may think himself aggrieved by the assessment of his property shall have the right to appear before the board for the purpose of having the assessment of his property adjusted, and provides for an appeal, but the section further provides:

"When any assessment has been raised * * * by the board, five days' notice thereof, in writing, shall be given to the owners of such property, or his agent, properly mailed to such person at his post office address appearing on the assessment, to appear at a time and place fixed in said notice to show cause why such assessment shall not be increased or other property added thereto."

It is admitted that defendant company was not served with notice of the change made by deducting $300,000 from the real estate assessment and adding the same amount to the assessment of personal property, notwithstanding the assessor is, by the section referred to, made secretary of the board of equalization, and it became his duty, as secretary, to mail the Champlin Company notice, and by reason of his failure so to do, the defendant was denied his right to appear before the board of equalization for the purpose of having the assessment adjusted, and for the reason stated, the assessment was not legally made as contended for by plaintiff, and its first contention in without merit.

Plaintiff next contends the Champlin Company's application to the board of county commissioners to correct the assessment was not in the form of an affidavit. Section 9674, Comp. St. 1921 (Sess. Laws 1915, p. 22, sec. 1), provides:

"The board of county commissioners of each county is hereby authorized to hear and determine allegations of erroneous assessments, mistakes of errors made in assessing or preparing the tax rolls, or in the description of the land and other property, before the taxes shall have been paid, on application of any person or persons who shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such error, mistake or difference. * * * It shall be the duty of the board of county commissioners to correct such error, and the county clerk, upon the order of said board, shall issue a certificate of error to the county treasurer, stating the amount of such correction, which amount the treasurer shall deduct from the original assessment or assessed amount."

The Legislature passed a similar act in 1910-11, but the same was declared unconstitutional, not by reason of the fact that there was anything inherently wrong in the statute, but only for the reason that the Legislature of 1910-11 failed to properly entitle the act, and it is manifest the Legislature, by passing the Act of 1916 (sec. 9674, C. O. S. 1921), correcting the errors or supplementing the deficiencies of the Act of 1910-11, intended to and did provide a method of correcting assessments by application to the board of county commissioners, which board was empowered to make such correction after final adjournment of the board of equalization, and plaintiff's contention in this behalf is without merit. In support of its position that a protest to the board of equalization and an appeal from its rulings is the exclusive method of having erroneous assessments corrected, plaintiff cites Weatherly v. Sawyer, 63 Okla. 155, 163 Pac. 717; Williams, Co. Clerk, v. Garfield Exc. Bank, 38 Okla. 539, 134 Pac. 863; Carrico v. Crocker, 38 Okla. 440, 133 Pac. 181; Thompson v. Brady, 42 Okla. 807 143 Pac. 6; Pryor v. McCafferty, Co. Treas., 69 Okla. 120, 170 Pac. 493. All the cited cases were governed by the laws in force in 1910-11, and prior to the act of 1916 (sec. 9674, C. O. S. 1921), which act supplied the omissions in the Act of 1910-11 (sec. 9673, C. O. S. 1921), and this court, having decided the Act of 1910-11 unconstitutional, left the taxpayer no remedy save through the board of equalization. In Weatherly v. Sawyer, supra, cited by plaintiff, this court said:

"Section 14 of said chapter 152 (Sess. Laws 1911), by which the board of county commissioners were authorized to hear and determine allegations of erroneous assessments or mistakes or differences in the description or value of land or other property at any session of said board before the taxes were paid, has been declared unconstitutional (In re Appeal of Franklin Hickman (63 Okla. 14) 162 Pac. 176, and, therefore, the remedy therein provided is not available to the taxpayer."

This court in Re Hickman, supra, held a portion of section 14 of an Act approved March 25, 1911 (Sess. Laws 1910-11, c. 152, p. 331), unconstitutional for that it was in "violation of art. 5, sec. 57 of the Constitution, providing that every act of the Legislature shall embrace but one subject, which shall be clearly expressed in the title."

It will be unnecessary to comment furher upon the cases cited.

The only question remaining to be determined is, whether that portion of the Act of 1916 (sec. 9674 C. O. S. 1921), requiring the applicant to the board of county commissioners to "show by affidavit" good

cause for not having attended the meeting of the board of equalization for the purpose of correcting errors, etc., is mandatory or directory merely.

The Act of 1916 (sec. 9674) was clearly intended to give the taxpayers a remedy against errors of taxation, when the taxpayer for some good reason failed to appear before the board of equalization, and being a remedial statute, it must be construed liberally in behalf of those for whom relief is provided and to effect its purpose. Alberti v. Moore, 20 Okla. 85, 93 Pac. 543; El Reno Elec. L. & T. Co. v. Jennison, 5 Okla. 759, 50 Pac. 144.

"Unless a fair consideration of a statute, directing the mode of proceeding of a public officer, shows that it was intended that a compliance therewith should be essential to the validity of the proceedings, the statute is to be regarded as directory rather than mandatory." Norris v. Cross, 25 Okla. 287, 105 Pac. 1000.

A directory provision within a statute is one, the observance of which is not necessary to the validity of the proceeding, and "generally speaking, those provisions which do not relate to the essence of the thing to be done, and as to which compliance is a matter of convenience, rather than substance, are directory, while the provisions which relate to the essence of the thing to be done, that is, to matters of substance, are mandatory." 25 R. C. L. 766; Des Moines v. Manhattan Oil Co., 193 Ia. 1096; Thompson v. Alameda, 144 Cal. 281, 77 Pac. 951; Denver v. Londoner, 33 Col. 104, 86 Pac. 117; People v. Sanitary Dist., 184 Ill. 597, 56 N. E. 951; State v. Douglas, 27 Nev. 467, 77 Pac. 936; Norman v. Thompson, 30 Tex. Civ. App. 537; Re Cusick, 10 L. R. A. 288, 136 Pac. 459, 20 Atl. 574; Troy Min. Co. v. White, 42 L. R. A. 549, 10 S. Dak. 475, 74 N. W. 236, are to the same effect and the rule appears to be universal.

In Gallup v. Smith, 12 L. R. A. 353, 59 Conn. 354, 22 Atl. 334, the court said:

"The most satisfactory and conclusive test of the question whether the provisions of a statute are mandatory or directory, is whether the prescribed mode of action is of the essence of the thing to be accomplished; in other words, whether it relates to matters material or immaterial, to matters of convenience or substance."

And in Hatch v. Ferguson, 33 L. R. A. 759, 15 C. C. A. 201, 68 Fed. 43, it is held:

"The intention of the Legislature is the cardinal consideration in the construction of the statutes, and whether a particular provision is mandatory or directory is to be determined from the language used and the purpose in view."

The object of the Legislature was to provide a method of correcting assessments other than through the board of equalization, where the taxpayer was for some good reason unable to attend the session of the board, and it will be observed the statute does not require the applicant to set forth a description of his land; the valuation placed by the assessor; the amount of the tax; the error, if any; or the amount the applicant believes to be just and right. In fact, nothing of substance of the claim is required to be stated under oath or otherwise, and the only affidavit required is one showing good cause why the applicant did not attend the meeting of the board of equalization. This not being of the substance or the essence of the claim, we are inclined to the opinion that this provision was inserted for the protection of the board of county commissioners, and was designed to prevent a multiplicity of applications upon unfounded claims, and left it to the discretion of such board whether it would consider a claim or not, where good cause was not shown by affidavit for not having the correction made before the board of equalization, and under a long line of uniform authorities, we hold the filing of the affidavit was directory only and not mandatory.

The board of county commissioners did consider the application, and the record testimony shows good cause for not attending, to wit, that the figures on the return made by the president of the defendant company were changed without his knowledge, and no notice was served on the company or its agent and the defendant had no knowledge of the change until the December after the meeting of the board of equalization in June, 1921.

There being no evidence to sustain the material allegations of the plaintiff's petition, and in view of the authorities herein cited, we recommend the judgment of the trial court be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 36 Cyc. pp. 1106, § 157; 25 R. C. L. p. 767. (2) 36 Cyc. pp. 1157, 1158; 25 R. C. L. p. 766. (3) 37 Cyc. p. 1103. (4) 4 C. J. pp. 897, § 2867, 900 § 2870.